RuffiN, J.
 

 Elis Honor was, probably, somewhat moved by the hardship of the case, on the other point, in forming his opinion on the point decided, and we might bo inclined to follow his example, if it could be done without danger of a general mischief. The judgment was, certainly, regularly given; for the statute directs, in case of the debtor’s failure to appear at the first term, that judgment shall be rendered instanter upon the bond returned, against the principal and sureties, to be discharged upon the payment of the debt and costs; and here the judgment was given by the Court after the debtor was duly called for the second time, and his default recorded. It is not what is called an office judgment only, but was that of the Judge himself; and, even if it were erroneous, it could not be corrected in this manner. But it was not erroneous, as it accords with the express words of the statute. Perhaps his Honor may have considered the subsequent more formal en
 
 *443
 
 try of the judgment by the clerk, in making up the record out of term time, irregular and improper. That, however, is hardly probable, as that is the universal course, and necessarily so. During term, the clerk can only make short minutes, and in making up the record, he is at liberty to put the orders and judgments into proper form, and supposing the clerk to com-' mit a misprison in making up the record, that would be no ground for vacating the judgment, but, on the contrary, it would authorise the other side to ask a correction of the record, so as to make it consistent with, and support the actual decision made by the Court, of which, in this case, there cannot be a doubt. The Judge, in fact, gave the judgment on the bond, and in the state in which the case then was, the only one which he could have lawfully given. It may be reversed, if erroneous, but there is no power to vacate it.
 

 There was no decision on the other point, and, therefore, it it is not, strictly speaking, brought up by the appeal; though apparently, his Honor intended it should be. The Court, has, however, considered it at. the instance of the counsel, and, in order to satisfy the parties it is well to express the opinion that has been formed. However hard the case may be, the Court does not perceive any ground on which the surety can be relieved. The insolvency of the principal debtor furnishes none, nor his death, since the judgment. The extreme sickness of the principal at the time, would have excused his nonappearance, and entitled him and his surety to a continuance under the 10th section of the statute, if that had appeared to the Court. But that was not made to appear, and, therefore, the Court could not properly have continued it. That was the fault of the party; for, although the sickness might have excused the debtor for not appearing, and the surety for not bringing him in, yet it furnished no reason for not appearing by attorney, and showing by witnesses their inability to attend in person. They might, in that manner, have shown their right to a continuance, and having failed in that there is now, no help for them. In the nature of things, the personal appearance of the debtor, was known to be requisite, and that,
 
 *444
 
 on bis default, judgment must go against them, unless the default was duly accounted for, so as to prevent the judgment; and it is the misfortune of the parties, that they did not account for it in apt time.
 

 The decision of the Superior Court is erroneous, and is reversed, and a
 
 procedendo
 
 must be awarded, — that the rule be discharged, and that the plaintiff may have execution on his judgment.
 

 Pise Cubiam, Judgment reversed.